UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

-against-

ALONZO SHIPP,

              Defendant.

MEMORANDUM & ORDER
19-CR-029 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Alonzo Shipp is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 3551 *et seq.* and one count of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 3551 *et seq.* (*See* Superseding Indictment (Dkt. 45).) Jury selection is scheduled for March 30, 2020 and trial is scheduled to begin on March 31, 2020. Currently pending before the court are the Parties' cross-motions *in limine.* (Def. Mot. *in Lim.* ("Def. Mot.") (Dkt. 52)); Gov't Mot. *in Lim.* ("Gov't Mot.") (Dkt. 53).) For the reasons stated below Defendant's motion is GRANTED in part and DENIED in part and the Government's motion is GRANTED in part and DENIED in part.

I. BACKGROUND[1]

In his motion, Defendant seeks to preclude the Government from admitting several pieces of evidence. First, Defendant seeks to preclude an emergency call (the "911 Call") placed by a witness (the "Complainant") who the Government contends was shot by

---

[1] The Court assumes the Parties' familiarity with the relevant facts and prior procedural history of the case.

1

Defendant, as well as statements made by Complainant to a responding police officer shortly thereafter. Second, Defendant seeks to exclude admission of a photo array administered to Complainant unless Complainant is subject to cross examination.[2] Third, Defendant seeks a ruling compelling the Government to make timely disclosure of any *Giglio* material. Fourth, Defendant seeks to prevent admission of certain Facebook messages sent and received by Defendant. Fifth and finally, Defendant renews his prior motion seeking to exclude expert testimony in the area of toolmarks analysis and, in the alternative, seeks to limit the expert testimony. (*See* Def. Mot.) The Government's motion seeks to admit the Complainant's statements in the 911 Call and his subsequent statement to the responding police officer. (*See* Gov't Mot.)

Both parties filed their respective motions on February 3, 2020. The government filed its opposition to Defendant's motion on February 17, 2020 (Resp. in Opp. to Def. Mot. ("Gov't Opp.") (Dkt. 55)), and Defendant filed his opposition to the Government's motion and reply to the Government's response on February 21, 2020 (Reply (Dkt. 56)).

## II. LEGAL STANDARD

### A. Motions in Limine

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Gorbea v. Verizon N.Y., Inc.*, No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996)). "Evidence should be excluded on a motion *in*

---

[2] The Parties have reached an agreement on this motion, and it is therefore moot.

*limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). Further, "courts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287). The court's ruling on a motion *in limine* is preliminary and "subject to change when the case unfolds." *Luce*, 469 U.S. at 41.

### B. General Rules of Admissibility

Evidence must be relevant to be admissible at trial. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. This relevance standard is "very low." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008)). All relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402; *see also White*, 692 F.3d at 246.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997). In short, Rule 403 requires the court to "make a conscientious assessment of whether unfair prejudice substantially

3

outweighs probative value" with regard to each piece of proffered evidence. *Al-Moayad*, 545 F.3d at 160 (quoting *United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1998) (per curiam)).

## III. DISCUSSION

The court addresses each of the parties' requests for admission or exclusion in turn.

### A. Defendant's Motion to Preclude and the Government's Cross-Motion to Admit the 911 Call

The Government seeks to admit a portion of Complainant's statements made to the operator during the 911 Call, as well as Complainant's statement, purportedly made to a responding police officer,[3] that "Pump" had shot him. (*See* Audio of 911 Call; Tr. of 911 Call (Dkt. 53-1); Gov't Mot. at 3-5.) Defendant argues that the 911 Call and the subsequent statement should be excluded because (1) the statements are inadmissible hearsay, (2) the statement to the responding officer implicates the Confrontation Clause, and (3) the probative value of the statements is sustainably outweighed by the danger of unfair prejudice. (*See* Def. Mot.) The court considers each of Defendant's arguments in turn.

#### 1. Hearsay Analysis

Defendant first argues that Complainant's statements to the 911 operator and the responding police officer are inadmissible because they are hearsay not subject to an exception. The

---

[3] It is not immediately clear from the audio of the call that the person to whom Complainant was speaking when he made this statement (at approximately 4:18 of the audio of the 911 Call) was a responding police officer. However, the Parties seem to agree that it was. (*See* Gov't Mot. at 4; Reply at 2-3.)

4

Government contends that Complainant's statements are admissible under Federal Rule of Evidence 803(1) as a present sense impression as well as Rule 803(2) as an excited utterance.

"A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it," is admissible as a present sense impression. Fed. R. Evid. 803(1). "The present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures." *Brown v. Keane*, 355 F.3d 82, 89 (2d Cir. 2004); *see also Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 233 (2d Cir. 1999) ("Statements based on present sense impressions . . . express knowledge based on direct sensory perception.").

"A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is admissible as an excited utterance. Fed. R. Evid. 803(2). "The rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." *United States v. Steele*, 216 F. Supp. 3d 317, 322 (S.D.N.Y. 2016) (quoting *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998)). In contrast to the present sense impression exception, an excited utterance does not require contemporaneity with the underlying startling event. *Id.* "Rather, the key question governing admission is whether the declarant was, within the meaning of Rule 803(2), under the stress of excitement caused by the event or condition." *United States v. Fell*, 531 F.3d 197, 231 (2d Cir. 2008) (citation and quotation marks omitted).

Here, Complainant's statements are admissible under both exceptions. Complainant placed the 911 call shortly after being shot. (*See* Tr. of 911 Call) While speaking with the 911 operator, Complainant reported that he had been shot, explained that the person who shot him was chasing him, and—referring to the

5

shooter as "Pump"—begged the shooter to spare his life. (*Id.*) Shortly thereafter, Complaint told a responding police officer that "Pump" had shot him. (*Id.*) These statements described the event of being shot immediately after it occurred, and contemporaneously described the shooter following Complainant and threatening Complainant. Complainant's statements to the 911 operator and the responding police officer are therefore admissible as a present sense impression. *See Brown v. Keane*, 355 F.3d at 89. Complainant's statements were also made while Complainant was under the stress of receiving a gunshot wound to the stomach and are thus also admissible as an excited utterance. *See Fell*, 531 F.3d at 231.

Defendant does not seriously contest that Complainant's statements fit the parameters of Rules 803(1) and 803(2). (*See, e.g.*, Reply at 1-3.) Instead, Defendant argues that the circumstances surrounding Complainant's statements call their reliability into question. (*See* Def. Mot. at 4-7; Reply at 1-3 (citing *United States v. Carneglia*, 256 F.R.D. 384, 392 (E.D.N.Y. 2009)).) Defendant argues that Complainant's statements are unreliable because—as he later admitted to law enforcement—he had been drinking all day prior to being shot. (Def. Mot. at 5, Reply at 2.) Defendant also points to statements later made by Complainant to law enforcement officers that Complainant "would not be able to identify his shooter because he had been too intoxicated." (Def. Mot. at 7.)

These arguments go to the evidentiary weight of Complainant's statements, however, and not their admissibility.[4] Rule 806 gives Defendant the right to attack Complainant's credibility through "any evidence that would be admissible for those purposes if the

---

[4] *Carneglia* is not to the contrary. In that case, Judge Weinstein noted that "the rules on hearsay should be read to exclude unreliable hearsay but to admit reliable hearsay" in the context of applying the residual hearsay exception. *Carneglia*, 256 F.R.D. at 392; *see also* Fed. R. Evid. 807.

declarant had testified as a witness." Fed. R. Evid. 806. Therefore, Complainant's purported inconsistent statements may be used by Defendant to attack his credibility, but not to preclude admission of the 911 Call. Additionally, Defendant contends that "[i]f the [G]overnment wishes to present an identification of the shooter, it should bring the [C]omplainant to court to be subject to cross-examination." (Reply at 3.) However, Defendant may himself call Complainant to testify, and, pursuant to Rule 806, "may examine" him "on [his] statement[s] as if on cross-examination." Fed. R. Evid. 806. Additionally, Defendant may avail himself of the Sixth Amendment's Compulsory Process Clause and subpoena Complainant to testify if he so chooses. *See, e.g., United States v. Inadi*, 475 U.S. 387, 397-98 (1986).[5]

2. Confrontation Clause Analysis

The Defendant next contends that, unless Complainant testifies, the Confrontation Clause precludes admission of Complainant's statement to the responding police officer. The Confrontation Clause prohibits the admission of "testimonial hearsay" without cross-examination. *Davis v. Washington*, 547 U.S. 813, 824 (2006). "Statements are testimonial if the primary purpose of the interrogation that elicited the statements was to create an out-of-court substitute for trial testimony." *Pham v. Kirkpatrick*, 711 F. App'x 67, 68-69 (2d Cir. 2018), *cert. denied*, 138 S. Ct. 2585 (2018) (quotation marks omitted) (citing *Michigan v. Bryant*, 562 U.S. 344, 356-58 (2011)). "The primary purpose of an interrogation that is subject to such scrutiny is determined through an objective analysis of the circumstances of an encounter and the statements and actions of the parties to it." *Id.* (citation and quotation marks omitted); *see also Bullcoming v. New Mexico*, 564 U.S. 647, 669 (2011) (Sotomayor, J. concurring) ("When the primary purpose of a statement is not to create a record for trial the

---

[5] As of Defendant's Reply, the Government had not disclosed Complainant's identity. The court addresses this in section II.B, *infra*.

admissibility of the statement is the concern of state and federal rules of evidence, not the Confrontation Clause." (citations and quotation marks omitted)).

Here, Defendant's Confrontation Clause argument is foreclosed by both *Bryant* and *Davis*. The facts here are remarkably similar to the facts in *Bryant*. Complainant made his statement to the responding police officer shortly after the being shot. The responding officer "did not know, and [Complainant] did not tell [the officer], whether the threat was limited to [Complainant]." *Bryant*, 562 U.S. at 373. Also similar to *Bryant*, this case involved a gun, which *Bryant* found to weigh against "construing the emergency to last only precisely as long as the violent act itself." *Id.* at 374. Based on the above, "this situation is more similar, though not identical, to the informal, harried 911 call in *Davis* than to the structured, station-house interview in *Crawford*." *Id.* at 377.

The court finds that the "primary purpose" of the responding officer's inquiry about the identity of Complainant's shooter was not "to create an out-of-court substitute for trial testimony." *See Pham*, 711 F. App'x at 68. Complainant's statement was therefore nontestimonial and is not subject to the Confrontation Clause.

### 3. Rule 403 Analysis

Finally, Defendant argues that admission of the 911 Call should be excluded under Rule 403. (*See* Def. Mot. at 9-11; Reply at 3-4.)

For the majority of the 911 Call, the danger of unfair prejudice does not substantially outweigh the probative value of Complainant's statements indicating that he was shot and that he identified his shooter as "Pump." However, the court agrees with Defendant that the calculus changes for certain statements the Government seeks to admit. Specifically, Complainant's statements "I'm dying. I'm dying" (Tr. at 3:6) and "I'm dying, ma'am"

8

(Tr. at 3:10) add little, if any, probative value to that of the rest of the call. However, these statements create a substantial risk of unfair prejudice to Defendant by leading the jury to consider the apparent seriousness of Complainant's injury, which is not relevant to the offenses charged. Therefore, the Government may admit the 911 Call up to and including the first time Complainant says, "I've been shot in the stomach." (Tr. at 3:5; 911 Audio at 1:23.) The remainder, from the middle of line 3:5 through line 3:10, may not be admitted.

For the reasons stated above, Defendant's motion to preclude Complainant's statements to the 911 operator and to the responding police officer is GRANTED in part and DENIED in part and the Government's motion to admit those statements is also GRANTED in part and DENIED in part.

### B. Defendant's Motion for Giglio Material

Defendant next moves to compel production of any witness impeachment evidence required by *Giglio v. United States*, 405 U.S. 150 (1972). Specifically, the Defense requests "all [Civilian Complaint Review Board ("CCRB")], [Internal Affairs Bureau ("IAB")], and civil lawsuit files concerning the law enforcement officers whom the government may call as witnesses at trial." (Def. Mot. at 14.) The Defendant seeks an order compelling production of this information "sufficiently in advance of trial that the parties may litigate, if needed, whether the defense should be permitted to cross-examine regarding any of the disciplinary material." (*Id.*) In response, the Government notes that it "is well aware of its *Giglio* obligations and . . . will produce *Giglio* materials for its witnesses at a reasonable time before trial."

The Government must disclose any "*Giglio* material in time for its effective use at trial." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "The required timing of such a disclosure depends on the materiality of the evidence and the particular circumstances of each case; thus, the Second Circuit has refrained

9

from defining the temporal requirements of the phrase in time for effective use." *United States v. Inniss*, No. 18-CR-134 (KAM), 2019 WL 6117987, at *2 (E.D.N.Y. Nov. 18, 2019) (quotation marks omitted). While "there is no pre-trial discovery right to *Giglio* materials, *United States v. RW Prof'l Leasing Servs. Corp.*, 317 F. Supp. 2d 167, 179 (E.D.N.Y.) (citing *United States v. Nixon*, 418 U.S. 683, 701 (1974)), "a district court has the discretion to order *Brady/Giglio* disclosure at any time as a matter of sound case management." *United States v. Taylor*, 17 F. Supp. 3d 162, 177 (E.D.N.Y. 2014) (citations and quotation marks omitted), *aff'd*, No. 16-3274-CR, 2020 WL 629955 (2d Cir. Feb. 11, 2020) (summary order).

Because the court is admitting statements made by Complainant that, if unimpeached, carry great potential weight, the prompt disclosure of any *Giglio* material related to Complainant is essential to protect Defendant's right to a fair trial. Therefore, the Government is ORDERED to disclose *Giglio* (and *Brady*) material as follows:

1) The identity of Complainant and any other *Giglio* material related to Complainant shall be disclosed by no later than March 16, 2020.

2) Any *Giglio* material related to the Government's other witnesses, including any CCRB, IAB, and civil lawsuit files for law enforcement witnesses, as well as any remaining *Brady* material in the Government's possession shall be disclosed by March 23, 2020.

### C. Defendant's Motion to Exclude Certain Facebook Messages

Since Defendant filed his motions *in limine*, the Parties reached an agreement on several of the Facebook messages that had been in dispute. (*See* Gov't Opp. at 5-7; Reply at 5.) Still in dispute are

messages from two Facebook conversations, one between Defendant and "Tasha theQueen" ("Tasha") on July 26, 2018 and another between Defendant and "Cutemloose Fam" on November 12, 2018.

1. The July 26, 2018 Messages

The Government seeks to admit and Defendant seeks to exclude two Facebook messages sent by Defendant in his conversation with Tasha on July 26, 2018. First, in response to Tasha's question "Why are u on the run," Defendant responds, "I take anything and I know u seen the news a shooting /a temp." Second, when Tasha asks Defendant "Where ya going," Defendant responds, "No where either a nigga smoke me or I smoke a nigga not going no where." (*See* Gov't Opp. at 6; Reply at 5-8.)

Defendant argues that the first statement should be excluded pursuant to *Old Chief* because the Government may offer other evidence to establish that Defendant was on the run from the police. (*See* Reply at 6 (citing *Old Chief*, 519 U.S. at 184).) However, because "the government will introduce other messages in which [Defendant] states clearly that he is on the run because of the shooting" (Reply at 6), the only additional potential prejudice that could come from this message is the reference to the shooting being on the news. The danger of unfair prejudice resulting from the reference to the shooting being on the news does not substantially outweigh the probative value of the message. This is reinforced by the fact that, as the Government notes, the danger of unfair prejudice may be mitigated by a limiting instruction. (Gov't Opp. at 6 (citing *United States v Snype*, 441 F.3d 119, 129 (2d Cir. 2006) for the proposition that "the law recognizes a strong presumption that juries follow limiting instructions").) Because the danger of unfair prejudice does not substantially outweigh the probative value, the court permits the Government to introduce the statement "I take anything and I know u seen the news a shooting /a temp."

Next, the court agrees with Defendant that the statement, "No where either a nigga smoke me or I smoke a nigga not going no where" creates a danger of unfair prejudice that substantially outweighs the statement's probative value. The court finds the statement to have limited probative value for at least two reasons. First, the statement is made during a part of the conversation between Defendant and Tasha where they are speaking about Defendant's future plans. A statement about what Defendant intends to do in the future can hardly be an "admission," as the Government contends (Gov't Opp. at 6.), of a past shooting. Second, it is unclear that "to smoke" a person necessarily means "to shoot" them. (*See* Reply at 6-7 (noting several different possible meanings for the verb to "smoke" a person in modern slang, including to shoot, to confront, to defeat, to fellate, and to discipline through extreme physical activity).) On the other side of the equation, the danger of unfair prejudice arising from this statement is quite high. First, the jury members—who may have a less nuanced understanding of the various ways "to smoke" is used in slang—may assume Defendant was speaking about shooting someone even if he was not. Second, even if Defendant was using "smoke" as a synonym for "shoot," the statement may lead the jury to draw an impermissible propensity inference: that Defendant routinely shoots people and is therefore guilty of the offenses charged. Because the danger of unfair prejudice substantially outweighs the probative value, the court will not permit the Government to admit the statement "No where either a nigga smoke me or I smoke a nigga not going no where" into evidence.

### 2. The November 12, 2018 Messages

Next, the Parties dispute whether the following messages between Defendant and "Cutemloose Fam" should be admitted:

**Author** Sts Pistol Tony (100002075016114)
  **Sent** 2018-11-12 01:18:15 UTC
  **Body** Im hurt to cuz i was chilling into this incident

**Author** Cutemloose Fam (100001001099045)
  **Sent** 2018-11-12 01:17:33 UTC
  **Body** ugh

**Author** Cutemloose Fam (100001001099045)
  **Sent** 2018-11-12 01:17:21 UTC
  **Body** I'm not for no scolding. It just hurts my heart cuzz. Truly hurts me

**Author** Sts Pistol Tony (100002075016114)
  **Sent** 2018-11-12 01:17:09 UTC
  **Body**
    Thats a fendi

**Author** Cutemloose Fam (100001001099045)
  **Sent** 2018-11-12 01:16:40 UTC
  **Body** u gotta be tired. you been through so much. just like me. Too much. and your still going.

**Author** Sts Pistol Tony (100002075016114)
  **Sent** 2018-11-12 01:16:24 UTC
  **Body** Factz ova tired

**Author** Sts Pistol Tony (100002075016114)
  **Sent** 2018-11-12 01:16:09 UTC
  **Body** Factz tryna get me to come to the bank i am starting ova im paying for a hotel 300 a week

**Author** Cutemloose Fam (100001001099045)
  **Sent** 2018-11-12 01:16:02 UTC
  **Body** a fucking nightmare geez. A fucking nightmare. You not tired?

Reviewing these messages, the court sees neither the high probative value the Government assigns to these messages (*see* Gov't Opp. at 6-7) nor the great risk of unfair prejudice that concerns Defendant (*see* Reply at 8-9). Therefore, the court defers ruling on the admissibility of these messages and will consider the Parties' arguments should the Government seek to admit these messages at trial.

### A. Defendant's Motions to Exclude or Limit Ballistics Expert Testimony

Finally, Defendant makes two motions regarding the Government's proposed ballistics expert testimony. Defendant previously moved under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to exclude firearms toolmarks analysis testimony from the Government's ballistics expert. (*See* Mot. to Exclude Proposed Ballistics Expert Testimony (Dkt. 30).) In short, Defendant sought to prevent expert testimony that bullet fragments and a shell casing recovered from crime scene were fired from the firearm found near the crime scene. *See United States v. Shipp*, --- F. Supp. 3d. ---, 2019 WL 6329658, at *1 (E.D.N.Y. Nov. 26, 2019).

The court granted Defendant's motion in part. The court found that the current research on the method used by the ballistics expert "has yet to show [that the method] can reliably determine, to a reasonable probability, whether separate pieces of ballistics evidence have the same source firearm." *Shipp*, 2019 WL 6329658, at *17. Because of the limited reliability of the matching method, the court ruled that the expert may testify "that that the toolmarks on the recovered bullet fragment and shell casing are consistent with having been fired from the recovered firearm," and that "the recovered firearm cannot be excluded as the source of the recovered bullet fragment and shell casing" but may not testify "to any degree of certainty, that the recovered firearm is the source of the recovered bullet fragment or the recovered shell casing." *Id.* at *16 (emphasis omitted). Det. Sean Ring (whose analysis was considered in the court's ruling) has since retired, and the Government provided notice that Det. Jeffrey Bahm will testify in his stead. (*See* Gov't Jan. 8, 2020 Letter to Def. (Dkt. 42).)

Here, Defendant (1) renews his original motion to exclude ballistics expert testimony in full and (2) requests that the court rule

that Det. Bahm "may not opine that individual characteristics [on a bullet fragment or shell casing] are unique to a specific firearm." (Def. Mot. at 27-28.) The Government "opposes the [D]efendant's efforts to relitigate his ballistics motion but has no objection to the [D]efendant's request that the [c]ourt apply it's prior ruling to Det. Bahm's testimony." (Gov't Opp. at 8.)

First, though Defendant renews his original notion, he "acknowledges the [c]ourt's ruling" on that motion and seeks to "preserv[e] those challenges rejected by the [c]ourt's ruling." (Def. Mot. at 27.) The court sees no reason to revisit its earlier decision, and Defendant's renewed motion to exclude Det. Bahm's testimony in its entirety is DENIED.

Next, the limiting instruction Defendant requests is unnecessary in light of the court's prior decision on this matter. Det. Bahm may not testify, "to any degree of certainty, that the recovered firearm is the source of the recovered bullet fragment or the recovered shell casing," *Shipp*, 2019 WL 6329658, at * 16 (emphasis omitted). Any attempt to circumvent the court's decision on this matter will not be allowed. Defendant's request for a limiting instruction is therefore DENIED.

## IV. CONCLUSION

For the reasons stated above Defendant's (Dkt. 52) motion *in limine* is GRANTED in part and DENIED in part and the Government's (Dkt. 53) motion *in limine* is GRANTED in part and DENIED in part.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York /NICHOLAS G. GARAUFIS
March 9, 2020 United States District Judge