UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

          -against-

ALONZO SHIPP,

                     Defendant.

**MEMORANDUM & ORDER**
**19-CR-29 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Alonzo Shipp is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 3551 *et seq.* and one count of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 3551 *et seq.* (*See* Superseding Indictment (Dkt. 45).) Currently pending before the court is Mr. Shipp's motion for bond. (Mot. for Bond ("Mot.") (Dkt. 63); Gov't Opp. to Mot. for Bond ("Opp.") (Dkt. 64); Reply (Dkt. 65); July 4, 2020 Def. Suppl. Letter ("July 4 Letter") (Dkt. 66).) For the reasons explained below, Mr. Shipp's motion is DENIED.

## I. BACKGROUND[1]

The Government alleges that, on July 20, 2018, Mr. Shipp shot an unnamed individual in the abdomen. (Compl. (Dkt. 1) ¶ 2.) After the shooting, Mr. Shipp allegedly fled to Richmond, VA, where he was arrested in January 2019. (Opp. at 1.) Mr. Shipp

---

[1] The court only includes the factual and procedural background relevant to this motion. Additional information can be found in the court's prior opinions in this case: *United States v. Shipp*, No. 19-CR-29 (NGG), 2020 WL 1140474 (E.D.N.Y. Mar. 9, 2020); *United States v. Shipp*, 422 F. Supp. 3d 762 (E.D.N.Y. 2019); and *United States v. Shipp*, 392 F. Supp. 3d 300 (E.D.N.Y. 2019).

1

was arraigned on a complaint on January 10, 2019. (*See* Jan. 10, 2019 Min. Entry (Dkt. 4).) At that appearance, Magistrate Judge James Orenstein rejected a bail package proposed by defense counsel and ordered Mr. Shipp detained. (*See id.*; Order of Detention (Dkt. 5).) Mr. Shipp has been incarcerated since then, roughly 18 months as of the date of this order.

Mr. Shipp has engaged in significant pretrial motion practice. On May, 3, 2019, he filed a motion to suppress evidence obtained from his Facebook account, which the court denied on July 15, 2019. (*See* Mot. to Suppress (Dkt. 20); July 15, 2019 Mem. & Order (Dkt. 31).) One month later, on August 16, 2019, Mr. Shipp filed a motion to exclude testimony and evidence from the Government's proposed ballistics expert. (Mot. to Exclude (Dkt. 33).) Oral argument was held on October 3, 2019, and the court granted his motion in part and denied his motion in part on November 26, 2019. (*See* Nov. 19, 2019 Min. Entry; Nov. 26, 2019 Mem. & Order (Dkt. 39).) Finally, Mr. Shipp filed motions *in limine* on February 2, 2020, which the court granted in part and denied in part on March 9, 2020. (*See* Def. Mot. *in Limine* (Dkt. 52); March 9, 2020 Mem. & Order (Dkt. 59).) Jury selection and trial was originally scheduled to begin March 30, 2020. On March 13, 2020, the trial was adjourned until May 26, 2020 (*see* Mar. 13, 2020 Min. Entry), and on May 1, 2020, the trial was adjourned *sine die* pursuant to EDNY Administrative Order ("AO") 2020-15 (*see* May 2, 2020 Order). Under EDNY AO 2020-20 (which superseded AO 2020-15), no civil or criminal jury trials may take place before September 15, 2020. (EDNY AO 2020-20 at 3.) At that time, Mr. Shipp will have been incarcerated for approximately 20 months.

Mr. Shipp has had limited access to his attorney during the pandemic. Legal visits at the Metropolitan Detention Center ("MDC"), where Mr. Shipp is housed, have been suspended since March 13, 2020. (Mot. at 4.) Since that time, Mr. Shipp has been

able to communicate with counsel only via 30-minute telephone calls and a single video call during which malfunctioning software prevented meaningful communication. (*Id.*) Mr. Shipp asserts that the approximately 300 inmates on his floor at MDC must share an allotted six legal calls per day. (*Id.* at 4 n.3.) Additionally, in a facility-wide search for contraband that occurred during the week of June 29, 2020, "the majority of Mr. Shipp's discovery—which consists of over 500 pages and 100 audio and surveillance files—was destroyed." (July 4 Letter at 1.)

## II. DISCUSSION

Mr. Shipp requests bond for two reasons. First, he argues that—with the adjournment of his trial due to the pandemic—his lengthy pretrial detention has become punitive in violation of the Fifth Amendment Due Process clause. Next, he argues that restrictions of his access to counsel violate the Sixth Amendment and, at least, mandate temporary release under the Bail Reform Act.

### A. Due Process

"To determine whether the length of pretrial detention has become constitutionally excessive, [a court] must weigh three factors: "(i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based." *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993).[2] "No particular time period marks the constitutional limit of pretrial detention; each case must be examined on its own facts." *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994). The factors are interdependent: "The longer the detention, and the larger the

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

3

prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's continuance." *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012). Here, the second and third factors weigh strongly against Mr. Shipp and overcome the court's concern about his admittedly lengthy pretrial incarceration.

As an initial matter, Mr. Shipp concedes that the Government is not responsible for the current delay.[3] (*See* Mot. at 3.) Nor was the Government responsible for much of the first 14 months of Mr. Shipp's pretrial incarceration. That delay is attributable to plea negotiations, review of discovery, substantial motion practice, and preparation for trial. (*See* Opp. at 6.) Mr. Shipp has mounted a vigorous defense that has resulted in multiple favorable rulings. *See Shipp*, 2020 WL 1140474, at *4, *6 (excluding certain evidence); *Shipp*, 422 F. Supp. 3d at 783-84 (limiting testimony of Government's ballistics expert). His case was scheduled for trial before the pandemic shattered the parties' and the court's plans.[4]

---

[3] The court acknowledges that while the circumstances causing the current delay are "entirely outside the government's control, [they are] also entirely outside of Mr. Shipp's." (Reply at 2 (quotation marks omitted).) The court also agrees that the pandemic is an unusual circumstance in which continued incarceration without a formal finding of guilt raises due process concerns even though the delay is not attributable to the Government. (Mot. at 3.) However, Mr. Shipp's due process challenge necessarily involves all 18 months of his incarceration and not just the last three and a half months. The court must therefore consider the reasons Mr. Shipp's trial was not conduced prior to the pandemic.

[4] The court agrees with Mr. Shipp argues that the "unprecedented situation" of the pandemic "must be considered" in the due process analysis. (Mot. at 3.) However, the court does not agree with Mr. Shipp's characterization that he faces an "[i]ndefinite delay." (*Id.*) While his trial is currently adjourned *sine die*, AO 2020-20 contemplates jury trials starting as soon as

Next, Judge Orenstein's order of detention was based on ample evidence. To justify pretrial detention, the Government must present "clear and convincing evidence that the defendant presents a danger to the community" or show by a "preponderance of the evidence that the defendant presents a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Mr. Shipp presents a danger to the community.[5] As summarized by the Government, he has an extensive criminal record, including several violent offenses and multiple offenses that were committed "while under court supervision or a suspended sentence." (*See* Opp. at 2-3.) Mr. Shipp acknowledges his history, but argues that it should be given limited weight, since "his last felony conviction was 6 years ago and for a non-violent offense." (Mot. at 4.) This overlooks the current allegations—supported by substantial evidence—that Mr. Shipp shot someone in the stomach. (*See* Opp. at 1-2.) Mr. Shipp's criminal history and the current charges against him prevent the court from finding that any conditions of release could "reasonably assure" the safety of the community. 18 U.S.C. § 3142(e); *see also United States v. Tomero*, 169 F. App'x 639, 641 (2d Cir. 2006) (summary order).

In light of the strong evidence justifying pretrial detention and the Government's lack of responsibility for the delay in his trial, Mr. Shipp's ongoing detention does not violate his due process rights at this time. While "due process places no bright-line limit on the length of pretrial detention," *Briggs*, 697 F.3d at 101, the Second Circuit and several district courts therein have found that similar and longer detentions do not violate the Constitution. *See Briggs* 697 F.3d at 103 (pretrial detention of roughly 26 months

---

September 15, 2020, and the court is prepared to conduct Mr. Shipp's trial as soon as it is safe to do so.

[5] The fact that Mr. Shipp fled to Virginia after the alleged conduct also supports a finding that he presents a risk of flight, although that risk is mitigated by the availability of GPS monitoring.

did not violate due process); *United States v. El-Hage*, 213 F.3d 74, 81 (2d Cir. 2000) (30-33 months not excessive in an especially complex case); *El-Gabrowny*, 35 F.3d at 65 (projected detention of 27 months not excessive); *United States v. Lewis*, 5 F. Supp. 3d 515, 530 (S.D.N.Y. 2014) (projected 22 month detention not unconstitutional); *United States v. Morrison*, No. 04-CR-699 (DRH), 2006 WL 2053729, at *3 (E.D.N.Y. July 21, 2006), *aff'd*, 199 F. App'x 40 (2d Cir. 2006) (pretrial detention of nearly two years not unconstitutional); *but see United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988) (per curiam) (32-month pretrial detention with trial still several months in the future violated due process); *United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2d Cir. 1986) (14-month detention unlawful where prosecution bore responsibility for much of the delay).

Mr. Shipp will be detained for at least 20 months before he will be given the opportunity to challenge the charges against him at trial. This is unquestionably a long time. However, it does not violate his due process right when viewed in light of the extenuating circumstances of the COVID-19 pandemic and the danger Mr. Shipp poses to the community. The court, however, is also cognizant of the fact that "for every set of circumstances, due process does impose some limit" on the length of permissible pretrial detention, *Briggs*, 697 F.3d at 103, and Mr. Shipp may renew his due process challenge if his trial is further delayed.

### B. Right to Counsel

Mr. Shipp next asserts that the temporary ban on legal visits at the MDC violate his Sixth Amendment right to counsel, and that the court should revoke his detention as a result. (Mot. at 4-5.) A defendant's right to counsel is violated when a jail or prison "unreasonabl[y] interfere[s] with the accused person's ability to consult counsel." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001). The touchstone here is reasonableness. *Benjamin* found unreasonable interference when "defense attorneys routinely

face[d] unpredictable, substantial delays in meeting with clients." *Id.* at 179. *See also Lowery v. Westchester Cty. Dep't of Correction*, No. 15-CV-4577 (KMK), 2017 WL 564674, at *3 (S.D.N.Y. Feb. 10, 2017) ("[P]rison restrictions on contact with attorneys do not unreasonably burden a plaintiff's right to counsel if the plaintiff has alternate means of communicating with counsel."); *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) ("[R]estrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel.")

Every pandemic-era decision of which the court is aware has found that temporary restrictions on attorney visits and legal calls is reasonable "in light of the global pandemic and the threat it poses to inmates, residents of New York City, and the nation at large." *United States v. Landji*, No. 18-CR-601 (PGG), 2020 WL 1674070, at *6 (S.D.N.Y. Apr. 5, 2020); *see also, e.g., United States v. Granados*, No. 20-CR-19, 2020 WL 3258401, at *4 (C.D. Cal. June 15, 2020); *United States v. Flores*, No. 19-CR-522, 2020 WL 3129173, at *2 (D. Colo. June 12, 2020); *United States v. Olszewski*, No. 15-CR-364 (WHP), 2020 WL 2420483, at *3 (S.D.N.Y. May 12, 2020); *United States v. Pena*, No. 18-CR-640 (RA), 2020 WL 1674007, at *1 (S.D.N.Y. Apr. 6, 2020). This court agrees. The temporary suspension of legal visits at the MDC is a reasonable restriction on Mr. Shipp's Sixth Amendment right to counsel in light of the COVID-19 pandemic.[6]

### C. Bail Reform Act

Finally, Mr. Shipp contends that his release is required under the Bail Reform Act. (Mot. at 5-6.) 18 U.S.C. § 3142(i) allows the

---

[6] The court also notes that the parties in *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, et al.*, No. 19-CV-660 (MKB) (E.D.N.Y.) continue to work toward a resolution that balances defendants' right to counsel and the need to protect defendants, staff, and attorneys alike from contracting COVID-19.

court to "permit the temporary release of the person" if the court "determines such release to be necessary for preparation of the person's defense or for another compelling reason." Pandemic-era decisions applying this provision have ordered the temporary release of a pretrial detainee when it was necessary to enable him to prepare for an imminent proceeding. *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, 2020 WL 1528120, at *1 (S.D.N.Y. 2020) (ordering release pursuant to § 3142(i) in light of the jail suspending attorney contact other than short, non-private phone calls and where trial was scheduled to begin in roughly six weeks); *United States v. Stephens*, ---F. Supp. 3d. ---, 2020 WL 1295155, at *3 (S.D.N.Y. 2020) (ordering release to allow defendant to prepare for a hearing that was less than a week away). However, courts have uniformly declined to temporarily release detainees in the absence of an imminent trial or hearing.[7] *See, e.g.*, *United States v. Mercado*, No. 19-CR-906 (JMF), 2020 WL 2765879, at *1 (S.D.N.Y. May 28, 2020) (finding temporary release unnecessary for the preparation of defense when the "trial [was] unlikely to occur for many months"); *United States v. Peralta*, No. 19-CR-818 (PGG), 2020 WL 2527355, at *4 (S.D.N.Y. May 18, 2020) (denying release when trial was not imminent, even though defendant spoke with counsel on the phone only once in nearly three months); *United States v. Jimenez*, No. 20-CR-122 (LTS), 2020 WL 1974220, at *3 (S.D.N.Y. Apr. 24, 2020) (denying release because, *inter alia*, trial was not imminent).

As explained above, Mr. Shipp's trial is not imminent and his release would pose a danger to the community. Therefore, the court declines to order his release pursuant to §3142(i). As with his due process claim, this analysis may change over time, and

---

[7] It is regrettable that Mr. Shipp's copies of his discovery materials were destroyed during a search for contraband. (*See* July 4 Letter.) However, because the Bail Reform Act analysis turns on the imminence of a defendant's trial or other proceeding, the lost discovery materials do not alter the court's decision.

8

Mr. Shipp may refile his motion if a trial date is set and he is still unable to meaningfully participate in his own defense.

### III. CONCLUSION

For the reasons above, Defendant's (Dkt. 63) motion for bond is DENIED.

SO ORDERED.

Dated:   Brooklyn, New York
         July 6, 2020

                                               /s/ Nicholas G. Garaufis
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge